UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| SHAWN WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:23-cv-00039-JMS-MJD |
| ) | |
| DAVID LIEBEL in his official and individual ) | |
| capacity as the Director of Religious Services for ) | |
| IDOC, ) | |
| A. WENCE Chaplain, in his individual capacity as ) | |
| the chaplain for Wabash Valley Correctional ) | |
| Facility, ) | |
| FAUST Chaplain Mr., in his individual capacity as ) | |
| the chaplain for Wabash Valley Correctional ) | |
| Facility, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Shawn Williams, an inmate at Wabash Valley Correctional Facility, filed this lawsuit alleging he was improperly deprived of a kosher diet. Defendants David Liebel, Chaplain Adam Wence, and Chaplain Joseph Faust have moved for summary judgment. Dkt. [44]. For the reasons below, that motion is **GRANTED IN FULL** as to Mr. Liebel and Chaplain Wence and **GRANTED IN PART AND DENIED IN PART** as to Chaplain Faust.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable

1

to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Williams and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73. "Taking the facts in the light most favorable to the non-moving party does not mean that the facts must come only from the nonmoving party. Sometimes the facts taken in the light most favorable to the non-moving party come from the party moving for summary judgment or from other sources." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021).

2

At the time of the incidents alleged in this lawsuit, Indiana Department of Correction ("IDOC") Central Office reviewed and approved all kosher diet requests from inmates at any IDOC facility, based on requests forwarded by the facilities. Dkt. 46-3 at ¶ 4; Dkt. 46-4 at ¶ 5. Mr. Liebel, as Director of Religious Services for IDOC, led the IDOC office that reviewed and approved or denied kosher diet requests. *Id.* at ¶ 4. It typically took up to 60 days to review a kosher diet application. *Id.* at ¶ 6. IDOC Central Office periodically distributed master kosher diet lists to facilities, listing inmates who were approved to receive such a diet. *Id.* at ¶ 8. An inmate who requested to be taken off the kosher diet usually had to wait 90 days before reapplying to receive it again. *Id.* at ¶ 10.

Mr. Williams has been incarcerated at Wabash Valley at all relevant times. He identifies as a Hebrew Israelite. Dkt. 46-1 at 11. As part of the practices of that religion, it is "recommended" but "not required" that he adhere to a kosher diet. *Id.* at 12. Mr. Williams first applied for permission to a receive a kosher diet in April 2019, which was approved by IDOC Central Office in May 2019. Dkts. 46-7, 46-8.

In late January 2022, Mr. Williams submitted a written request to the Chaplain's Office at Wabash Valley to be taken off the kosher diet. Dkt. 46-1 at 23. However, after speaking with other Hebrew Israelites, he was persuaded to continue on the diet. *Id.*

Wabash Valley Chaplain Faust came to speak about Mr. Williams's written request on February 1, 2022. Dkt. 46-5 at ¶ 17. Mr. Williams testified in his deposition that he told Chaplain Faust he had changed his mind about wanting to be taken off the diet. Dkt. 46-1 at 23. Chaplain Faust cannot now recall that conversation. Dkt. 46-5 at ¶ 18. However, on March 1, 2022, Chaplain Faust sent an email to IDOC employee Deanna Storm (position unknown), stating that he had spoken to Mr. Williams and "Confirmed Kosher removal request." Dkt. 46-8. Then, on May 20,

3

2022, IDOC employee Caleb Wainman (position unknown) emailed Wabash Valley Chaplain Wence, saying that Mr. Williams and two other inmates "no longer wish to be on Kosher." Dkt. 46-9. On May 31, 2022, Mr. Wainman again emailed Chaplain Wence, indicating that Mr. Williams wanted to go off the kosher diet. Dkt. 46-10. Mr. Williams's supposed written request or requests to be taken off the kosher list have never been found or disclosed. Dkt. 46-1 at 23. It is, or at least was, standard practice at Wabash Valley that if an inmate requested to be taken off a kosher diet, a chaplain would first speak with the inmate before forwarding such a request; but if a correctional officer relayed an inmate's request to be taken off a kosher diet, it was "typically accepted at face value." *Id.* at 12-13.

Mr. Williams appeared on the IDOC master kosher diet list issued on April 27, 2022, but was absent from the next list issued on June 6, 2022, because of his "written request to chapel." Dkt. 46-3 at ¶¶ 17-18. Despite being removed from the master list, Mr. Williams continued receiving kosher meals until October 2022. Dkt. 46-1 at 26. Sometime that month, Mr. Williams had an argument with an unidentified guard who came to him and offered a non-kosher meal, telling Mr. Williams that if he took it, he would be removed from the kosher diet list. *Id.* at 18-19. Mr. Williams did not take the non-kosher meal and told the guard he was on a hunger strike. *Id.*

However, sometime after that incident, Mr. Williams stopped receiving kosher meals. On October 4, 2022, he filed a grievance stating in part, "I have no understanding why I am not on my diet. . . . I have not signed any paperwork taking me off my diet or have I been provided with any paperwork stating I was removed off my diet." Dkt. 46-11 at 3. Wabash Valley Grievance Specialist S. Crichfield emailed Chaplain Wence, asking for more information about the grievance. After reviewing the May 2022 emails about Mr. Williams, Chaplain Wence responded, "Williams . . . requested to be removed from his kosher diet for violating his agreement and taking non kosher

4

trays." *Id.* at 4; dkt. 46-4 at ¶¶ 24-25. However, Chaplain Wence now states that he cannot recall why he said that Mr. Williams had violated the kosher diet agreement. Dkt. 46-4 at ¶ 26.

On November 19, 2022, Mr. Williams reapplied for a kosher diet. Dkt. 46-12. On December 28, 2022, Mr. Williams filed a request for an interview about not being yet put back on a kosher diet. Dkt. 46-13. Chaplain Faust responded, noting the May 31, 2022 email indicating Mr. Williams wanted to be taken off the diet, his subsequent request to be put back on the diet, and that he should expect a response from IDOC Central Office about his new request by January 19, 2023. *Id.* On January 20, 2023, Mr. Liebel wrote a letter to Mr. Williams stating that his kosher diet request had been approved. *Id.* at 46-14. However, Mr. Williams testified that he did not receive this letter. Dkt. 46-2 at 4. On January 24, 2023, he filed a grievance about not being put back on a kosher diet. Dkt. 46-15. Chaplain Faust investigated the matter and responded on February 3, "Central Office has approved your Kosher diet application and we show you to be listed on the most recent diet list." *Id.* at 3. Mr. Williams filed this lawsuit on January 27, 2023, and recalls that he started receiving a kosher diet again shortly thereafter. Dkt. 46-2 at 4.

Apparently, sometime after filing this action Mr. Williams again stopped regularly getting kosher meals at his request, although it is unclear precisely when. The record reflects that on January 7, 2024, Mr. Williams submitted another kosher diet application, pursuant to which he received a new kosher diet preference card on March 6, 2024.[1] Dkts. 46-16, 46-17. Mr. Williams testified in his deposition that, even when approved for a kosher diet, he sometimes accepted non-kosher meal trays because a guard would indicate they were out of kosher trays, and "just for the convenience of everybody, there were times where I just took the regular tray." Dkt. 46-2 at 1. Also, he sometimes requested to be taken off the kosher diet altogether because of inconsistency

---

[1] Mr. Williams's deposition took place on February 8, 2024, at which time he said he was not getting a kosher diet.

5

in how his diet requests were handled: "After a while it gets irritating and annoying . . . . It just got overwhelming to deal with BS everyday or every other day." Dkt. 46-1 at 13-14.

The Court screened Mr. Williams's complaint and allowed First Amendment claims under 42 U.S.C. § 1983 and Indiana state law claims for intentional infliction of emotional distress to proceed against Mr. Liebel, Chaplain Wence, and Chaplain Faust. Dkt. 7. It allowed Mr. Williams to pursue damages against all Defendants and injunctive relief against Mr. Liebel in his official capacity. *Id.* It dismissed any claims arising under the Religious Land Use and Institutionalized Persons Act. *Id.*

Discovery closed in this case on February 20, 2024. Dkt. 19. Defendants moved for summary judgment on May 17, 2024. Dkt. 44. As part of their designation of evidence, Defendants moved to seal Exhibit G, an unredacted copy of the IDOC master kosher diet lists issued between February 2022 and February 2023, which includes inmate names and their facility and bed locations. Dkt. 48. Mr. Williams did not respond to the motion to seal. Also, it appears that he was provided with redacted copies of these lists during discovery. *See* dkt. 46-2 at 1. Magistrate Judge Dinsmore granted the motion to seal on January 28, 2025. Dkt. 67. Mr. Williams now objects to that order. Dkt. 68.

On June 11, 2024, Mr. Williams responded to the summary judgment motion and designated evidence in support thereof. Dkts. 51-53. Defendants filed a reply on June 26 and did not designate any new evidence. Dkt. 55. On July 11, Mr. Williams filed a purported sur-reply and designated new evidence, namely an affidavit from another inmate regarding his kosher diet experiences. Dkts 58-59. On July 22, Mr. Williams designated another piece of evidence, namely a purported Wabash Valley "Personal Preference Diet Card Cancellation Form." Dkt. 61-1. On August 6, Mr. Williams filed a motion to file an amended summary judgment response. Dkt. 63.

6

Defendants have moved to strike or objected to Mr. Williams's purported sur-reply and his attempts to designate new evidence and amend his summary judgment response. Dkts. 60, 62, 64.

## III.
## Discussion

### A. Procedural Issues

Before addressing the merits of the summary judgment motion, the Court addresses the outstanding procedural issues in this case. First, the Court **GRANTS** Defendants' motions to strike, dkts. [60] and [62], and **DENIES** Mr. Williams's motion to amend his summary judgment briefing, dkt. [63]. Although Defendants, in part, cite Federal Rule of Civil Procedure 12(f) in support of their motions to strike, that rule only applies to pleadings, not other filings such as Mr. Williams's here. *See King v. City of Fishers*, 2020 WL 4726640, at *1 (S.D. Ind. Aug. 14, 2020). Still, the Court has discretion to enforce compliance with its discovery and briefing rules and deadlines, which may include striking unauthorized summary judgment sur-replies and belated designations of evidence. *See Best v. Safford*, 2018 WL 1794911, at *2 (S.D. Ind. Apr. 16, 2018); *see also McCurry v. Kenco Logistics Servs.*, LLC, 942 F.3d 783, 787 (7th Cir. 2019) ("district judges may strictly enforce local summary-judgment rules"). "Strict enforcement" may also apply to pro se litigants. *See McCurry*, 942 F.3d at 787 n.2.

The "purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 2010 WL 1258052 (S.D. Ind. Mar. 25, 2010) (cleaned up). Local Rule 56-1(d) allows a summary judgment sur-reply only in limited circumstances—if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response. Where a sur-reply is permitted, it must be limited to the new evidence or objections. *Best*, 2018 WL 1794911 at *2.

7

"New evidence" only means that a response is allowed by the non-movant to new evidence cited by the movant, not that the non-movant is allowed to introduce entirely new evidence. *Id.*

Defendants' reply to Mr. Williams's response did not cite any new evidence—rather, it argues that Mr. Williams failed to rebut their designated evidence. There were no appropriate grounds for Mr. Williams to file a sur-reply. Additionally, to the extent Mr. Williams belatedly sought to designate "newly-discovered" evidence, or to supplement his original summary judgment response, "[t]he Court has the discretion to deny a request for leave to file a supplementary response to a motion for summary judgment where the party does not explain why the materials in the supplementary response could not have been discovered earlier, or why he had not immediately sought to amend or extend the filing deadline." *Spierer v. Rossman*, 2014 WL 4908023, at *3 (S.D. Ind. Sept. 30, 2014), *aff'd*, 798 F.3d 502 (7th Cir. 2015) (citing *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse–Wis., Inc.*, 991 F.2d 1249, 1257 (7th Cir. 1993)).

Additionally, Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Mr. Williams did not seek any extension of time or a re-opening of discovery in this matter, nor did he ever move to compel discovery from Defendants that he belatedly claimed was not provided. "In managing their caseloads, district courts are entitled to—indeed they must—enforce deadlines." *Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015).[2]

---

[2] In any event, regarding the "Diet Cancellation Form" that Mr. Williams belatedly attempted to interject into this case, Mr. Williams himself testified in his deposition that he did, in fact, submit a written request to be removed from the kosher diet list. It is undisputed that Chaplain Faust talked to him about that request. What is disputed is whether Chaplain Faust accurately conveyed that Mr. Williams confirmed his request

Second, the Court addresses Mr. Williams's response to Magistrate Judge Dinsmore's sealing of Defendant's Exhibit G in support of summary judgment—copies of the IDOC master kosher diet lists issued between February 2022 and February 2023. Dkt. 68. Federal Rule of Civil Procedure 72 allows parties to object to a magistrate judge's ruling. *See also* 28 U.S.C. 636(b). When the objection is to a ruling on "a pretrial matter not dispositive of a party's claim or defense," the district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

Putting aside that Mr. Williams did not previously object to Defendants' motion to seal this exhibit, he has failed to demonstrate that Magistrate Judge Dinsmore's ruling was clearly erroneous or contrary to law. His ruling clearly and correctly articulates that "good cause" existed, for security and safety reasons, for sealing a record that contains the names, religions, and locations of numerous IDOC inmates. Additionally, to the extent Mr. Williams asserts he did not have a fair opportunity to examine evidence used against him, the Court reiterates that, during Mr. Williams's deposition, reference was made to the fact that he had been provided a redacted copy or copies of the master kosher diet list or lists relevant to his claims. Dkt. 46-2 at 3. And, when or whether Mr. Williams appeared on the lists is not disputed in this case—it is how or why he was not on the lists that is relevant. In sum, Mr. Williams's objection to Magistrate Judge Dinsmore's order is **OVERRULED**.

---

to be removed from the list. The existence or non-existence of a form is not dispositive of any relevant issue in this case. And as Defendants note, the form is clearly not an official IDOC form and is at most evidence of an informal procedure at Wabash Valley regarding preferred diet requests. Finally, there is no evidence that this form, produced in the summer of 2024 after IDOC procedures for requesting religious diets had changed, was in use or existence during 2022, when the claims at issue arose.

### B. Generally Applicable Law – First Amendment

To succeed on his First Amendment free-exercise claim, Mr. Williams must convince a factfinder that Defendants "personally and unjustifiably placed a substantial burden on his religious practices." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (cleaned up). An isolated instance that impacts an inmate's religious practice will often be "de minimis" and "not of constitutional dimension." *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (denial of pork-free meals on three isolated occasions "does not constitute more than a de minimis burden on [plaintiff's] free exercise of religion").

### C. Substantial Burden

In part, Defendants argue that there is insufficient designated evidence that any temporary denial of kosher meals to Mr. Williams "substantially burdened" a religious belief or practice of his. They note the evidence that (1) a kosher diet is "recommended" but "not required" by his religious beliefs; (2) he often accepted non-kosher meals in lieu of kosher ones, even when he was approved for a kosher diet; (3) he admitted to sometimes withdrawing his requests to be on a kosher diet altogether.

The Court readily concludes that there is a genuine issue of material fact as to whether Mr. Williams's religious beliefs were substantially burdened by the approximate 4-month gap at issue in this case—from October 2022 through January 2023—when he was completely denied access to a kosher diet. First, a religious practice does not necessarily have to be "central" to a religion or mandated by it in order for an institutional rule barring it to impose a substantial burden on religion, "if the practice is important and based on a sincere religious belief." *Levitan v. Ashcroft*, 281 F.3d 1313, 1321 (D.C. Cir. 2002). Mr. Williams's deposition testimony would support a finding by a

10

jury that a kosher diet was an important part of his sincerely held religious beliefs, even if it was not strictly mandatory.

Second, when an inmate is presented with a choice between religious-conforming food and non-conforming food, the inmate does not have to choose to go hungry. See *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir.1990) (involving Muslim inmates forced to choose between pork and inadequate nutrition). Mr. Williams's deposition testimony would support a finding by a reasonable jury that his occasional decisions to accept non-kosher food, rather than insisting on and waiting for kosher food after being told that no kosher trays were available, did not negate the sincerity of his belief in wanting kosher food.

Third, making it exceedingly difficult for an inmate to receive a kosher diet would seem to fit the very definition of "substantial burden." Mr. Williams's deposition testimony that he sometimes requested to be taken off the diet altogether because of the hassle associated with being on it is not evidence as a matter of law that a kosher diet was unimportant to him. Although the general alleged hassle of being on an IDOC-approved kosher diet is not at issue in this case, as opposed to the specific timeline alleged in Mr. Williams's complaint, that alleged hassle also creates an issue of fact as to whether or not his occasional desire to go off a kosher diet altogether reflects an insincerity of belief in the practice.

### D. Personal Responsibility

Defendants also contend there is a lack of evidence that any of them were personally responsible for the temporary cessation of Mr. Williams's kosher diet. "'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). For this purpose, each defendant is considered

11

independently. *Id.* The same personal responsibility requirement applies to claims arising under the First Amendment. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Prison officials may satisfy the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at the official's direction or with his or her knowledge and consent." *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019); *see also Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614–15 (7th Cir. 2002) (to be held liable under section 1983, a supervisory official must have had personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct). "Proof that a supervisor was negligent or even grossly negligent in failing to detect or prevent constitutional violations is insufficient." *Mayes v. City of Hammond*, 442 F. Supp. 2d 587, 634 (N.D. Ind. 2006). An official may be liable under § 1983 only if they act with deliberate or reckless disregard of an inmate's constitutional rights. *Childress v. Walker*, 787 F.3d 433, 440 (7th Cir. 2015).

### 1. Chaplain Wence and Mr. Liebel

Regarding Chaplain Wence, he reviewed the grievance Mr. Williams filed in October 2022, saw the earlier emails regarding Mr. Williams's alleged wish to be taken off the diet, and informed Grievance Specialist Crichfield accordingly. Chaplain Wence essentially admits now that the other statements to Crichfield about Mr. Williams allegedly violating the terms of his kosher diet agreement might have been unfounded, or that he cannot recall the basis for those statements. It might even be possible to say there would be a question of fact as to whether Chaplain Wence was negligent in not reviewing the grievance more carefully.[3] Still, there is no evidence that Chaplain

---

[3] The Court admits some confusion as to why prison chaplains would accept "at face value" a staff member's statement that an inmate wanted to be removed from a religious diet but require independent confirmation of an inmate's written request. If anything, it would seem that confirmation of a hearsay statement related by a staff member would require additional investigation or confirmation. But, evidence of a poor policy or practice, or even a negligent one, is not enough to impose liability under § 1983.

Wence had actual knowledge that the emails he reviewed about Mr. Williams were inaccurate. In the absence of such knowledge, he cannot be held liable for the continued deprivation of Mr. Williams' kosher diet after reviewing the grievance. *See Williams*, 927 F.3d at 482.

Regarding Mr. Liebel, there is even less evidence that he had any personal knowledge or involvement at all in the temporary cessation of Mr. Williams's kosher diet. He supervised the office that ultimately produced master kosher diet lists from IDOC Central Office during the time frame at issue, based on information provided by individual IDOC facilities.

Because the designated evidence demonstrates as a matter of law that neither Chaplain Wence nor Mr. Liebel had any personal responsibility for any deprivation of Mr. Williams's First Amendment rights, they are entitled to summary judgment on his § 1983 claims.

### 2. Chaplain Faust

The Court concludes that a material question of fact exists regarding Chaplain Faust's personal responsibility for the 4-month long and, as Mr. Williams asserts, involuntary termination of his kosher diet between October 2022 and January 2023. The evidence is muddy as to why exactly it took many months from the time Chaplain Faust first notified another prison official that Mr. Williams wanted to go off his kosher diet, in early March 2022, and when the actual deprivation began to occur in October 2022.

Nonetheless, one reasonable inference that may arise from the designated evidence is that the only actual written request Mr. Williams ever submitted about being taken off the kosher diet was the one referred to in January 2022, which Chaplain Faust talked to Mr. Williams about, and which Mr. Williams testified he told Chaplain Faust that he did in fact want to remain on a kosher diet at that time, thus revoking the written request. There is no record anywhere of Mr. Williams having submitted a different, subsequent written request. Another reasonable inference is that

13

Chaplain Faust acted at least recklessly with respect to reporting that Mr. Williams wanted to be taken off the kosher diet after speaking with him. And yet another reasonable inference is that Mr. Williams, for some unknown reason, continued receiving kosher meals until early October 2022, and that the reason he stopped receiving them then was because of Chaplain Faust's inaccurate statement to others at Wabash Valley that he wanted to stop receiving them.

Perhaps a jury would find that Chaplain Faust made an honest mistake and so cannot be liable under § 1983 for the Mr. Williams being taken off the kosher diet against his wishes, but that would require a credibility determination that the Court cannot make at summary judgment. *See Ashman v. Barrows*, 438 F.3d 781, 784 (7th Cir. 2006) ("We are particularly leery of resolving issues involving a state of mind on summary judgment.") "Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles." *McGreal v. Ostrov*, 368 F.3d 657, 677 (7th Cir. 2004) (cleaned up).

### E. Qualified Immunity

Chaplain Faust also asserts that he is entitled to qualified immunity.[4] "[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "To overcome the defendant's invocation of qualified immunity, [a plaintiff] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). This "clearly established" standard ensures "that officials can

---

[4] The Court need not address Chaplin Wence's and Mr. Liebel's qualified immunity arguments.

'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton,* 483 U.S. 635, 646 (1987)).

To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 583 U.S. at 64 (quoting *Anderson*, 483 U.S. at 641). Although "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quotation marks omitted)). Qualified immunity thus "balances two important interests— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

Here, the law was clearly established in 2022, and considerably earlier, that prison officials violate the First Amendment if they knowingly deprive an inmate of a religious diet request without legitimate penological justification. *See, e.g.*, *Willis v. Commission, Indiana Dep't of Corr.*, 753 F. Supp. 2d 768 (S.D. Ind. 2010). Chaplain Faust does not assert that he was unaware

15

of this settled law, nor that there would have been a legitimate penological justification for depriving Mr. Williams of a kosher diet against his wishes. Chaplain Faust's qualified immunity argument is essentially just a reframing of his claim that he had no personal responsibility for the deprivation, or that the deprivation did not substantially burden Mr. Williams's religious freedom. Again, the Court finds questions of fact exist on those points. As such, Chaplain Faust is not entitled to summary judgment on Mr. Williams's § 1983 claims.

### F. State Law Claims – Intentional Infliction of Emotional Distress

Indiana recognizes the tort of intentional infliction of emotional distress, which is defined as intentionally or recklessly, by extreme and outrageous conduct, causing severe emotional distress to another person. *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991). However, even if there were questions of fact as to whether any Defendant acted "extremely" and "outrageously," the Indiana Tort Claims Act ("ITCA") applies here.[5] *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003).

"Among other things the statute provides substantial immunity for conduct within the scope of the employee's employment." *Id.* Specifically, "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code § 34-13-3-5(b); *see also Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the [ITCA], there is no remedy against the individual employee so long as he was acting within the scope of his employment."). "Even criminal acts may be considered as being within the scope of employment if the criminal acts originated in activities so closely associated with the employment relationship as to fall within its scope." *Bushong*, 790 N.E.2d at 473.

Here, there is no question that reviewing and approving kosher diet requests, or relaying those requests to others, were very much a part of the job descriptions for Mr. Liebel, Chaplain

---

[5] Mr. Williams did not respond to any of Defendants' arguments about the state-law claims.

16

Wence, and Chaplain Faust. And, even though there might be a dispute of fact as to whether Chaplain Faust in particular acted wrongfully with respect to Mr. Williams, that does not negate the fact that he was acting within the scope of his employment for purposes of immunity under ITCA. *See Bushong*, 790 F.2d at 473; *see also Jaromin v. Town of Yorktown*, 697 F. Supp. 3d 816, 871-72 (S.D. Ind. 2023). All Defendants are entitled to summary judgment as to the state-law claims of intentional infliction of emotional distress.

### G. Injunctive Relief

Finally, the Court addresses Mr. Williams's claim for injunctive relief. The Court allowed this claim to proceed specifically against Mr. Liebel in his official capacity only, based on Mr. Williams allegations in his complaint that he was, at the time of the complaint, being deprived of a kosher diet. However, Mr. Williams does not now dispute that he did again being receiving a kosher diet shortly after filing this suit, that he later voluntarily went off the diet, but then again requested permission to be put back on it, which was granted. There also is no evidence here of an unconstitutional IDOC policy regarding kosher diets that must or should be altered through injunctive relief. At this point, Mr. Williams's claims for injunctive relief are moot, but his claim for damages against Chaplin Faust will continue. *See Crue v. Aiken*, 370 F.3d 668, 677 (7th Cir. 2004). However, in this situation, because all of the remaining issues will be resolved by the substantive action against Chaplain Faust, specifically whether he temporarily violated Mr. Williams's First Amendment rights, a declaratory judgment would serve no useful purpose and that claim for relief shall not proceed. *See Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002).

## IV.
## Conclusion

Defendants' motions to strike, dkts. [60] and [62], are **GRANTED**. The clerk is directed to strike dkts. [58], [59], and [61] from the docket. Mr. Williams's motion to amend his summary judgment response, dkt. [63], is **DENIED**, and his objection to Magistrate Judge Dinsmore's order to seal, dkt. [68], is **OVERRULED**.

Defendants' summary judgment motion, dkt. [44], is **GRANTED** in full as to all claims against Mr. Liebel and Chaplain Wence. The **clerk is directed** to terminate these parties as defendants on the docket. The motion is **GRANTED** in part as to all state law claims and any claim for declaratory relief against Chaplain Faust but **DENIED** in part as to the claims for damages against him under the First Amendment and 42 U.S.C. § 1983.

The Court prefers that Mr. Williams be represented by counsel for the remainder of this action. Therefore, the Court now reconsiders its prior denial of Mr. Williams's motion for counsel, dkt. [26]. The Court intends to recruit counsel for Mr. Williams unless he files notice with the Court **within 14 days of this Order** that he wishes to proceed pro se through settlement and trial. Once counsel has been recruited, or if Mr. Williams gives notice that he wishes to continue pro se, the Magistrate Judge is asked to schedule a telephonic status conference to discuss further proceedings.

**IT IS SO ORDERED.**

Date: 2/28/2025

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

SHAWN WILLIAMS
178128
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

Magistrate Judge Dinsmore's Chambers